Judge Marshall
delivered the Opinion of the Court.
In 1820, Henry Crist, Wm. F. Hilton and John Leeright entered into an injunction bond, as the sureties of Elijah Cartmell, and received, for their indemnity, a mortgage of Cartmell’s interest in two tracts of land, in relation to the first of which, the mortgage states, that a suit was pending between Wm. Newbold and Cartmell. The injunction having been afterwards dissolved, a judgment was obtained on the bond, against the sureties alone, the whole amount of which was subsequently made by execution. Whereupon, Crist filed this bill against all the obligors in the injunction bond, in which he shows that the entire debt had been paid by Hilton and himself, but much the largest portion by himself, and alleging that Cartmell and Leeright were insolvent, and the latter a non-resident, and that the tract of land first mentioned in the mortgage had been sold under a decree in favor of Newbold, under a prior mortgage—he prays that the other tract may be sold, and that the proceeds should be applied to reimburse the excess of payments made by him beyond those made by Hilton, and then equally to the reimbursement of both, or, if the proceeds should prove insufficient for his separate reimbursement, that Hilton might be decreed to contribute one half of the deficiency, so as to equalize the loss.
Hilton, who alone answered the bill, resists any decree against him, and claims the preference in the appropriation of the proceeds of the mortgage, and to be repaid his advances, by Crist, if necessary — alleging, in substance, that certain slaves, which were sold as the property of Crist, were not his, but belonged to another; that, for the sum raised by that sale, Crist has no right to ask contribution from him, nor remuneration from *385 the mortgaged property, until his own advances are repaid; that,exclusive of the price of the slaves, the payments by Crist were less than his own; and farther, that Crist had agreed to pay the debt, and had, for that purpose, received property from Cartmell, which he represented to Hilton as sufficient, and which, in fact, was sufficient, but which he had converted to his own use; and, therefore, that Crist had not only no right to call on him for contribution, but was, in truth, bound to reimburse him, especially as he had acted in the matter under the influence of Crist’s agreement to pay the debt, and his representations as to, the property. But there being no proof of any such agreement, nor of any other property being pledged for this debt but that included in the mortgage, Hilton’s claim of precedence and of remuneration, so far as it depends on these allegations, was properly disallowed, and need not be further noticed.
Sureties having replevied the debt, before it was paid, procured a surety for themselves, in the replevin bond; but as it does not appear that he paid any thing, and is not liable for contribution, nor otherwise interested—he is not a necessary party to a suit by one of the sureties, against another, for contribution: a conjecture that he may be liable, will not sustain an objection to the bill, on the ground that he is not a party.
In the progress of the suit, the second tract of land mentioned in the mortgage was sold, under the direction of the Court, and the proceeds being far from sufficient to remunerate Crist for the alleged excess of his payments, a decree was rendered against Hilton for one half of the deficiency, as asked for in the bill.
Of this decree Hilton complains: first—on the ground that the proper parties were not before the Court; and, second — on the ground that Crist had no equity against him.
I. In support of the first ground, it is suggested that E. H. Hamilton, who was the surety in the replevy bond entered into by Crist, Hilton and Leeright, under the judgment against them, may have gone into the bond as the surety of Cartmell, or by his persuasions, and may, therefore, be equally bound to contribute; and that he should have been made a party, that his alleged insolvency might be inquired into. But the record furnishes no foundation for this conjecture. Hamilton appears to have been the surety of the defendants in the judgment, *386 and no part of the debt was collected from him. He has, therefore, no interest in the contest between the parties for whom he became surety; and the mere conjecture that he may have become their surety under circumstances which bound him to contribute equally with them to the payment of the debt, unsupported by any allegation of either party, and contradicted by all apparent probability, forms no ground 'for determining that he should have been a party, or for reversing the decree because he was not before the Court.
A mortgage given to indemnify sureties, recites that there is a suit pending with another party respecting the land: if he has a subsisting interest, when a suit between the sureties involving the mortgage is instituted, he should the made a party, that the actual state of the title may be disclosed; but if it appears that, the suit referred to, had been determined, and the interest, having passed to one of the sureties, is no longer an outstanding title,the former holder of it, is not a necessary party.
In a suit by one surety against another, for contribution, it appeared, that the debt (or a part of it) had been made, by a levy on, and sale of, slaves, as the property of the complainant, but which he had admitted were the property of a third party, who claimed them, at the time of the levy: query, as to the complt's rights in that state of case. But a jury having found the slaves subject to the ex’on, and the claimant having waived her-right to it, in favor of the def’t in the ex’on, and consented to the sale-, thereby precluding her right except as against him—his attitude and rights are the same as tho’ there had been no adverse claim, to the property.
*386 It is further suggested, that Newbold should have been made a party. The mortgage shows that, at its date, he had, or claimed to have, some interest in one of the tracts of land therein mentioned. It was certainly necessary to ascertain, in this contest, what had become of that interest, and, under certain circumstances, he would have been a necessary party. But the bill states that the tract referred to had been sold under his prior mortgage; and it appears, from the evidence, that Newbold himself had become the purchaser, and received the commissioner’s deed; that he had sold and conveyed his interest to Crist, and that Crist had sold the land, or a part of it, to one Shekels — so that Newbold was divested of all interest in the subject before this suit was brought. And he was not, as seems to be supposed by Hilton’s counsel, a necessary party for contesting the question whether Crist was or was not under any obligation to account for the value of the land, with his co-sureties, or to apply the net profits of the purchase and sale to the payment of their joint debt, as an indemnity against which it was mortgaged to them all. This is a question purely between the parties to that debt.
IL The second objection to the decree seems to be founded mainly upon the idea advanced in the answer of Hilton, that the slaves did not belong to Crist, and that, though seized and sold as his, the amount made by the sale cannot be charged by him against his co-sureties, nor give him any equitable right to reimbursement, nor indeed any cause of action in his own name. It is not necessary to decide the general question here pre *387 sented. For although it may be assumed, from the record, that the slaves were not the property of Crist, or that if his, they were placed and kept in the possession of another, whose title he acknowledged, for a fraudulent purpose, and perhaps, with a view to defeat the collection of this debt; still they were not only found to be subject to the execution (as Crist’s property,) on a trial of the right of property, in which Hilton co-operated with the creditor in establishing Crist’s title, but the claimant, after the verdict, and before the sale, renounced her claim, and assured the bidders that the purchasers should not be molested by her—they agreeing to permit her to retain and re-purchase the slaves, on payment of the amount bid for them, and reasonable hire in the mean time. It seems sufficiently obvious that this relinquishment was made for the benefit of Crist alone; and it is to be inferred that the consideration of the arrangement, and the means of complying with it, on the part of the claimant of the slaves, proceeded from him. Bat, be this as it may, by giving up the slaves to be sold as the property of Crist, she lost all right of action on account of the sale, except against Crist himself, and the slaves became, for the purposes of that execution, and as to all the parties concerned in it, his property, if they were not so before. Whether this relinquishment was gratuitous on the part of the claimant, or for a consideration, executed or executory, or whether the slaves already belonged to Crist, are questions immaterial to his co-sureties. They cannot, nor can a Court of Equity, in a contest between him and them, discriminate between a payment made by him with money or property which had long been his, and one with money or property which was given or loaned or sold to him, merely to enable him to make the payment.
Where some of a set of sureties are insolvent, the loss must, be equalized among the others.
We are of opinion, therefore, that Crist had a right to charge this payment, and to demand contribution for it from his co-sureties, if he has not been, or had the means of being, compensated in some other mode.
The principal debtor and one of the co-sureties being-insolvent, it was equitable to divide the loss, when properly ascertained, between him and the remaining surety,. *388 as determined in the case of Breckinridge vs. Taylor, Spring term, 1837. [Ante, 110.]
A tract of land mortgaged to several co-sureties, for their indemnity, was sold under a decree,lo satisfy a prior mortgage, and purchased, for a trifle, by the sen. mortgagee, who consented that one of the jun. mortgagees might pay the debt (for which also, or for the title, he was bound) and take the land; which was accordingly cenveyed to him. Held, that the effect of this arrangement—presumed,from facts proved, to have been the consummation of an agreement made before the sale—is, not to give the last purchaser an unincumbered title to the land; but merely to relieve it from the prior, for the benefit of the subsequent, mortgage.
The purchaser, upon thus obtaining the title, held the land in trust—first, to re imburse himself for the actual consideration paid by him for it; then, to reimburse what he had advanced towards the surely debt, more than the other sureties; then to indemnify himself and them equally. The surplus, if any remains, will belong to the mortgagor.—Until that fund is exhausted, the holder of it cannot call on his co sureties for contribution.
*388 But another objection to the decree arises from the facts disclosed in relation to the tract of land which had been mortgaged to Newbold, and was sold under a decree in his favor. This tract contained about three hundred acres, and is proved to have been worth five dollars per acre. Newbold’s debt, for which it was sold, was about five hundred and thirty dollars. He purchased the land, under the decree, for fifty dollars, agreeing to let Crist—who was present, and who was Cartmell’s surety in the mortgage to Newbold, either for the title, or for the debt, and who was the creditor of Newbold in an equal or greater sum— have it, for the amount of the debt secured by the mortgage, which was not much more than one third of its estimated value at the time. We infer from the manner in which these facts appear in the testimony, and especially from Newbold’s first deposition, that this agreement between him and Crist, preceded the sale under the decree. In which case, the substance of the transaction would be, that Crist, through the intervention of Newbold, was the real purchaser under the decree; and whatever his intention may have been, the effect of his purchase was, to relieve the land from the prior incumbrance, for the benefit of himself and co-sureties, for whose joint indemnity the second mortgage was executed.
The consequence of this view of the facts, is that, as Crist held this tract of land in trust — first, for the repayment of the actual consideration given for it, by him, and then, for the indemnity of himself and his co-sureties, according to the tenor of the mortgage to them, he was bound to surrender up the land for these purposes, or to account for its fair value, before he could rightfully call upon his co-sureties for contribution. In ascertaining the value of the land, the price obtained for any part of it sold bona fide by Crist, would be evidence. And in adjusting the rights of the parties to the value or the proceeds of the land, Crist should first be repaid the cost of purchasing in the legal title, and the residue should *389 be applied — first, to the reimbursement of the excess of Crist’s advances in payment of the common debt, and then, equally to the reimbursement of himself and Hilton. If any thing should still remain, it would of course belong to Cartmell, the mortgagor. An account should have been taken, on these principles, before Crist was entitled either to a sale of the second tract mentioned in the mortgage, or to any decree against Hilton. The second tract having been already sold, its proceeds are properly applicable to reducing the excess of Crist’s payments.
A surety, who had acquired certain property that had belonged to the principal, under such circumstances, that he was equitably bound to apply it to the payment of the debt—filed his bill against a co-surety, for contribution; the co-surety resisted—not on that, but on other and different grounds: but held, that, notwithstanding this defence seemed to be a matter of avoidance, and was neither alleged nor proved by the deft; yet, as the comp't, in his bill, disclosed the facts, & must do equity before he can ask it—he can have no decree against his co-surety, but for his due proportion of the deficiency, after that fund is exhausted.
The answer of Hilton does not allege the facts on which this view of the case arises, in any form more specific than the general charge, that Crist had received from Cartmell property enough for the payment of the debt, and had converted it to his own use. And, as this charge does not seem to apply to land which was mortgaged to Hilton as well as Crist, it may be, that, if the facts just considered constituted matter of defence or avoidance alone, they ought not to have any decisive influence on the case, as not being strictly within the allegata. But they are brought out by Crist himself, in his attempt to show what had become of the tract of land in question; they show that he has had a part of the common indemnity in his hands, under circumstances which render it probable that he has made profit from it, and which, at least, require that he should account for its proceeds, before he can claim contribution for his advances. It cannot be allowed, in equity, that he should apply any portion of this fund to his private emolument, while his co-sureties are losers. And, as he comes into the Court demanding contribution on a principle of general equity, which emphatically requires that he should himself do equity before he asks it, the Court ought to have compelled him to do that which, in strictness, he should have ottered to do, and which is the condition on which alone he can entitle himself to any relief—that is, to set off the net value of the land beyond its actual cost, against his own advances. This should have been done upon the facts of the case, if there had been no answer. And upon the prayer of *390 the answer, if the account should show that the net value of the land to Crist was greater than the excess of his advances, Hilton would be entitled .to a decree to some extent, on the principles above stated.
It was erroneous, therefore, to decree in favor of Crist, without ascertaining and deducting from his demand the net value of his purchase of the mortgaged land, and for this error the decree is reversed, and the cause remanded for further proceedings, in conformity with this opinion.